UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| WILHELMINA MOORE, | Civil Action No.: 4:08-cv-3800-TLW-TER |
| Plaintiff, | |
| -vs- | **REPORT AND RECOMMENDATION** |
| WILLIAMSBURG COUNTY SCHOOL DISTRICT; WILLIAMSBURG COUNTY SCHOOL BOARD; RALPH FENNELL, JR., SUPERINTENDENT; RUMMELL TAYLOR, PRINCIPAL; BETTY R. McKNIGHT; and PEPPER RAY; | |
| Defendants. | |

I.   INTRODUCTION

Plaintiff, who is proceeding pro se, alleges claims of racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., due process and equal protection violations under 42 U.S.C. § 1983, and a state law claim of defamation, all arising out of her employment with Defendant Williamsburg County School District (the District). Presently before the Court is Defendants' Motion for Summary Judgment (Document # 81). Because Plaintiff is proceeding pro se, she was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to Defendants' Motion could result in a recommendation that the Motion be granted. Plaintiff filed a Response (Document # 87), to which Defendants filed a Reply (Document # 89).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e) & (g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district

judge.

## II.     FACTS[1]

Plaintiff has been employed with the District since 1982.  Plaintiff Dep. pp. 152, 159-60 (attached as Ex. 1 to Defendants' Motion).  Plaintiff worked as a teacher at St. Marks Elementary from 1985 until 2007, when she was reassigned to teach at the District's Alternative School.  Id. pp. 45, 50.  Plaintiff is employed currently as a teacher and guidance counselor at the Alternative School.  Id. pp. 52-53.  Plaintiff's claims arise out of events during the 2006-2007 school year and her reassignment to the Alternative School.  Id. p. 55.

In January of 2007, Rummel Taylor, the Principal of St. Marks Elementary, wrote up Plaintiff for awarding Honor Roll certificates to students who did not meet the criteria for Honor Roll under District Policy.  Id. p. 75; Taylor Letter dated Jan. 10, 2007 (attached as Ex. 6 to Defendants' Motion).  Plaintiff does not dispute the contents of the write-up and admits she failed to properly calculate her student's grades for Honor Roll eligibility.  Plaintiff Dep. p. 75; Plaintiff Letter dated Jan. 22, 2007 (attached as Ex. 7 to Defendants' Motion).  Principal Taylor's January 10, 2007, letter to Plaintiff instructed her to "write a letter to the parents of the students who think their child made Honor Roll explaining to them that you made a mistake and their child did not make School Honor Roll."  Taylor Letter dated Jan. 10, 2007.  Principal Taylor also instructed Plaintiff to provide her with a copy of the letters.  Id.

On January 25, 2007, Principal Taylor wrote a follow up letter to Plaintiff stating "as of today, I have not received a copy of the letter that you were asked to send home to parents, therefore

---

[1]These facts are taken from Defendants' Memorandum in Support of their Motion for Summary Judgment and the exhibits submitted in support thereof.  Although Plaintiff filed a Response to the Motion, she has not filed any evidence in support of her Response.

I can only assume it has not been sent. I consider this as insubordination on your part." Taylor Letter Dated Jan. 25, 2007 (attached as Ex. 8 to Defendants' Motion). Plaintiff sent letters to the parents dated January 29, 2007, advising of her mistake in awarding the students Honor Roll certificates and asking them to return the certificates. Plaintiff Dep. pp. 91-92; Plaintiff Letter dated Jan. 29, 2007 (attached as Ex. 9 to Defendants' Motion).

Superintendent Ralph Fennell received copies of the correspondences between Principal Taylor and Plaintiff regarding the mistakenly awarded Honor Roll certificates and Plaintiff's eventual letters to parents admitting her error. Fennell Aff. ¶¶ 5-6 (attached as Ex. 10 to Defendants' Motion). Fennell considered Plaintiff's error with the grades a significant concern. Id. He also believed Plaintiff's insubordinate failure to immediately advise the parents of her mistake as Principal Taylor instructed was good cause for non-renewal of her teaching contract with the School District. Id. Fennell determined it was in the District's best interest not to renew Plaintiff's contract for the 2007-2008 school year. Id. ¶¶ 4-5. On April 3, 2007, Fennell met with Plaintiff and notified her of his decision not to renew her contract and the reasons for his decision. Id. ¶ 3; Plaintiff Dep. pp. 137-38; Fennell Letter dated Apr. 3, 2007 (attached as Ex. 11 to Defendants' Motion).

Plaintiff filed a grievance contesting the non-renewal of her contract. Fennell Aff. ¶ 7. Her attorney wrote Fennell asking the reasons for her termination. Id. Fennell responded to the letter on April 17, 2007, advising him that Plaintiff's contract was not renewed due to her insubordination and her failure to properly maintain her grades for students. Id. Fennell also stated that Plaintiff would be afforded a hearing to contest the non-renewal. Id.

Plaintiff also filed a Complaint with the United States Department of Education Office for Civil Rights (OCR) dated April 5, 2007, and received by the OCR on April 9, 2007. Discrimination

Complaint Form (attached as Exhibit 18 to Defendants' Motion); Letter from OCR to Fennell (attached as Exhibit 17 to Defendants' Motion).  In her Complaint, Plaintiff alleges discrimination based upon race and age and asserts that she lost her job for giving the wrong Gifted and Talented Test and other "unfounded issues" while a white co-worker who also gave the wrong test did not lose her job.  Discrimination Complaint Form.  In a letter dated May 2, 2007, the OCR notified Fennell of Plaintiff's Complaint and informed him that Plaintiff's Complaint was being transferred to the Equal Employment Opportunity Commission (EEOC).  Letter from OCR to Fennell.

Fennell thereafter reconsidered the non-renewal and offered Plaintiff a teaching contract for the 2007-2008 school year.  Fennell Aff. ¶ 8; Contract for 2007-08 (attached as Ex. 12 to Defendants' Motion).  Despite deciding to renew her contract, Fennell continued to believe the District had good cause for not renewing the contract  Fennell Aff. ¶ 8.  The contract specified Plaintiff's assignment to teach at the Alternative School rather than St. Marks Elementary.  Contract for 2007-08; Plaintiff Dep. ¶ 153.  Fennell transferred Plaintiff to the Alternative School because her failure to timely advise parents of her mistake when instructed to do so by Principal Taylor caused concern about the apparent strained relationship between Plaintiff and Principal Taylor.  Fennell Aff. ¶ 8.

On April 24, 2007, Plaintiff signed the contract to teach at the Alternative School for the 2007-2008 school year.  Contract for 2007-08; Plaintiff Dep. p. 153; Fennell Aff. ¶ 10.  Plaintiff received the same compensation in her position at the Alternative School that she would have made had she remained at St. Marks Elementary.  Fennell Aff. ¶ 10.  On June 4, 2007, Plaintiff filed a grievance protesting the transfer to the Alternative School and seeking a hearing before the District's Board of Trustees.  The Board declined to grant her a grievance hearing because the transfer to the

Alternative School was a lateral move. Plaintiff Dep. p. 154; Fennell Aff. ¶ 10.

The present action is based also on two other incidents that occurred during the 2006-2007 school year in addition to her reassignment. On November 9, 2006, Principal Taylor wrote up Plaintiff for administering the wrong test sections of the Gifted and Talented Test to her students. Taylor Letter to Plaintiff dated Nov. 6, 2006 (attached as Ex. 13 to Defendants' Motion). Principal Taylor's letter states that she spoke with the District Testing Coordinator regarding the testing and Plaintiff was not supposed to give students the vocabulary portion of the test. Id.

Plaintiff concedes she does not know whether the vocabulary portion of the test should have been given to the students. Plaintiff Dep. p. 65. Plaintiff does not dispute that Principal Taylor contacted the District Testing Coordinator to determine whether the wrong test sections had been given. Id. p. 68-69. Pepper Ray, a white second grade teacher, also gave the same test sections as Plaintiff. Id. Principal Taylor gave Ms. Ray an identical write-up for administering the wrong test sections to her students. Id. p. 71; Taylor Letter to Ray dated Nov. 6, 2006 (attached as Ex. 14 to Defendants' Motion). Plaintiff contends the November 9, 2006, write-up for administering the wrong test is the reason her contract was not renewed. Plaintiff Dep. p. 73.

Plaintiff also complains about a memorandum Betty McKnight, the cafeteria manager at St. Marks Elementary, wrote dated March 15, 2007, asking for Plaintiff's help in addressing table cleanliness. McKnight Memo dated March 15, 2007 (attached as Ex. 15 to Defendants' Motion). Plaintiff disputes that her class left the table in the cafeteria dirty and believes that Principal Taylor was behind Ms. McKnight writing Plaintiff the memorandum. Plaintiff Dep. p. 116.

Plaintiff further alleges race discrimination motivated her grade level teaching assignment transfers while she taught at St. Marks Elementary. Amended Complaint ¶ 14. White teachers at St.

Marks Elementary also were moved to teach different grade levels during the relevant period. Plaintiff Dep. pp. 166-173. Plaintiff's Complaint states that the discriminatory treatment began in November 2006; however, Plaintiff's grade level assignment at St. Marks was not changed after November 2006. Id. pp. 55, 166-173.

### III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.   DISCUSSION

### A.   Race Discrimination

Plaintiff's race discrimination claim is based on the following alleged actions: (1) Principal Taylor's November 9, 2006, write-up of Plaintiff for administering the wrong section of the Gifted and Talented Test, (2) Plaintiff's grade level teaching assignment changes while working at St. Marks Elementary and (3) Plaintiff's reassignment from St. Marks Elementary to the Alternative School.

A plaintiff may prove a Title VII discrimination claim against her employer with direct evidence of racial discrimination or by using circumstantial evidence and the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to create an inference of discrimination. Lightner v. City of Wilmington, 545 F.3d 260 (4th Cir. 2008); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-86 (4th Cir. 2004) (en banc).

To establish a prima facie case of discrimination utilizing the burden-shifting test under McDonnell Douglas, Plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action she was performing up to her employer's expectations; and (4) other employees who are not members of the

protected class did not suffer the adverse employment action. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124,133 (4th Cir.2002). The fourth element can be established by presenting evidence raising an inference of discrimination. See Miles v. Dell, Inc., 429 F.3d 480, 486-87 (4th Cir.2005); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n. 2 (4th Cir.2001) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  This is merely a burden of production, not of persuasion.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)).  In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but is pretext for discrimination.  Reeves, 530 U.S. at 143.  Throughout the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff.  Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her.

Defendants argue that Plaintiff has failed to establish a prima facie case of discrimination because she has not suffered an adverse employment action.  "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's

employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375-76 (4th Cir.2004). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

The write-up Plaintiff received after administering the wrong sections of the Gifted and Talented Test does not rise to the level of an adverse employment action. See Lewis v. Forest Pharmaceuticals, Inc., 217 F.Supp.2d 638, 648 (D.Md.2002) ("Reprimands, whether oral or written, do not per se significantly affect the terms or conditions of employment.") (citing Nye v. Roberts, 159 F.Supp.2d 207, 213 (D.Md.2001), vacated and remanded on other grounds, 2002 WL 31163732 (4th Cir.2002)); Oest v. Illinois Dep't of Corrections, 240 F.3d 605, 612-613 (7th Cir.2001) (job related criticism, including negative performance reviews and oral or written reprimands, does not constitute an adverse employment action absent some tangible job consequence); Naughton v. Sears, Roebuck & Co., No. 02-4761, 2003 WL 360085 at *5 n. 1 (N.D.Ill.2003) (criticism, including a negative performance review or development plan, does not constitute an adverse employment action). Plaintiff fails to present sufficient evidence that the write-up she received resulted in any further, tangible job consequence.[2]

Additionally, the grade-level and school reassignments do not constitute adverse employment actions. A "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." Boone v. Goldin, 178 F.3d 253, 256

---

[2] Even if the write-up is an adverse employment action, it is undisputed that Pepper Ray, the white teacher who also incorrectly administered the Gifted and Talented Test, received the identical write-up from Principal Taylor. Thus, Plaintiff also fails to meet the fourth element of a prima facie case of discrimination.

(4th Cir.1999). "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Id. at 256-57; see also Taylor v. Virginia Dep't of Corrs., 177 F.Supp.2d 497, 504-05 (E.D.Va.2001). A mere change in an employee's job assignment, even if "less appealing to the employee, ... does not constitute adverse employment action." Booz-Allen, 368 F.3d at 376. Plaintiff fails to point to evidence that her grade-level reassignments or her reassignment to the Alternative School resulted in any decrease in compensation, job title, level of responsibility, opportunity for promotion or that the reassignments had any other significant detrimental effect.

In sum, Plaintiff fails to show that she suffered an adverse employment action and, thus, cannot establish a prima facie case of race discrimination.

Nevertheless, even if Plaintiff had suffered an adverse employment action, her claim of race discrimination still fails because Defendants have presented legitimate, non-discriminatory reasons for their actions and Plaintiff has failed to show that their reasons were pretext for discriminatory reasons. Specifically, Plaintiff does not dispute that she administered the wrong portions of the Gifted and Talented Test and that she received a write-up from Fennell as a result. Plaintiff also does not dispute that she miscalculated her students' grades when issuing the Honor Roll certificates and failed to timely remedy the situation as directed by Principal Taylor. It is outside this Court's province to decide "whether the reason [for he adverse employment action] was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the action]." Hawkins v. Pepsico, 203 F.3d 274, 279 (4th Cir.2000) (quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir.1998); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel

department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer"). Plaintiff has failed to show that Defendants' reasons for their employment actions were pretext for intentional discrimination. Therefore, summary judgment is appropriate on this claim.[3]

**B.     Retaliation**

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 258 (4th Cir.1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998). If Plaintiff establishes a prima facie case, Defendants can rebut the presumption of retaliation by

---

[3] For these same reasons, Plaintiff's equal protection claim under § 1983 fails as well. See Abasiekong v. City of Shelby, 744 F.2d 1055, 1058 (4th Cir. 1984) (holding that equal protection claim based on employment discrimination is established through the same proof scheme used to prove claims asserted under Title VII); Pastene v. Beaufort County School Dist., No. 9:02-3880-23, 2004 WL 3961191, *3 (D.S.C. Jan 28, 2004).

articulating a non-retaliatory reason for its actions. At that point, Plaintiff has the opportunity to prove that Defendants' legitimate, non-retaliatory reason is pretextual. See Matvia v. Bald Head Island Management, 259 F.3d 261, 271 (4th Cir.2001).

Plaintiff engaged in protected activity when she filed a Complaint with the OCR following the non-renewal of her contract.[4] See Warren v. Halstead Industries, Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218, 108 S.Ct. 2872, 101 L.Ed.2d 907 (1988); Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 258 (4th Cir.1998). To establish a causal connection between the filing of her Complaint with the OCR and any employment action taken by Fennell, Plaintiff must show that Fennell knew of her protected activity. Baqir v. Principi, 434 F.3d 733, 748 (4th Cir.2006); Hooven-Lewis v. Caldera, 249 F.3d 259, 273 (4th Cir.2001) (recognizing that plaintiff's "informal contacts with the EEO and informal complaints [would be] protected activities if the accused person or entity knew about them" (emphasis added)); Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998) (holding that the "employer's knowledge that the plaintiff engaged in the protected activity is absolutely necessary to establish the third element of the prima facie case"). Although Plaintiff filed her Complaint with the OCR on April 5, 2007, Fennell was not notified of the Complaint until he received the May 2, 2007, letter from the OCR informing him of the Complaint and that it had been transferred to the EEOC. Plaintiff signed her contract to teach at the Alternative School on April 24, 2007, before Fennell became aware of her protected activity.

---

[4]Plaintiff also filed an internal grievance with the District following the non-renewal of her contract. The record does not reveal the exact nature of her grievance. However, she testifies in her deposition that the first time she raised her claim of discrimination was when she filed her Complaint with the OCR. Plaintiff Dep. p. 161. To constitute protected activity, a plaintiff's opposition must be to an employment practice the plaintiff reasonably believes is unlawful under Title VII. Jordan v. Alternative Resources Corp., 458 F.3d 332, 339 (4th Cir. 2006); 42 U.S.C. § 2000e-2(a)(1). Plaintiff presents no evidence that her internal grievance contained any allegations of discrimination; thus, her grievance falls outside the protections of Title VII.

Therefore, Plaintiff cannot show a causal connection between the filing of her Complaint with the OCR and her reassignment to the Alternative School. Accordingly, Plaintiff has failed to establish a prima facie case of retaliation. Furthermore, for the same reasons discussed above, even if Plaintiff had established a prima facie case of retaliation, Defendants provide legitimate, non-retaliatory reasons for their actions. Thus, summary judgment is appropriate on this claim.[5]

### C.     Due Process

Plaintiff alleges under § 1983 that her due process rights were violated when the District denied her a hearing to contest her reassignment to teach at the Alternative School. Plaintiff Dep. p. 178. To establish a due process violation, Plaintiff must show Defendants deprived her of a constitutionally protected property interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972). "[To] have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577. Thus, to have a constitutionally protected property interest in teaching at St. Marks Elementary, Plaintiff must show a "legitimate claim of entitlement" to teach at that School rather than any other School in the District.

Plaintiff's employment contract explicitly states that "the Employee is subject to reassignment if necessary. The District has the right to make such transfers within its sole discretion." Employment Contract (attached as Ex. 12 to Defendants' Motion). Furthermore, the term of the contract was for one year only and the contract provides that "[n]othing contained herein shall

---

[5] To the extent Plaintiff asserts claims of retaliation or race discrimination under Title VII against the individual Defendants, those claims are without merit as there is no individual liability under Title VII. Lissau v. Southern Food Services, Inc., 159 F.3d 177, 180–81 (4th Cir.1989); Jones v. Sternheimer, No. 09–2242, 2010 WL 2711305, at *2 (4th Cir. July 6, 2010).

-13-

obligate the District to renew this contract except as specified by S.C. Code of Laws." Id. Thus, Plaintiff had no contractual right to renewal of her contract, much less to assignment at St. Marks.

No property interest in assignment to St. Marks arises out of state law either. The statutes which protect teachers' employment rights are contained in the South Carolina Teacher Employment and Dismissal Act. S.C. Code Ann. §§ 59-25-410 to -530. The Act provides teachers the right to a hearing to contest dismissal or non-renewal, but it does not provide for a hearing to contest a transfer or reassignment. S.C Code Ann. §§ 59-25-420, 59-25-430, and 59-25-460; Snipes v. McAndrew, 280 S.C. 320, 313 S.E. 2d 294 (1984) (holding that that a transfer, reassignment, or demotion is not equivalent to dismissal or non renewal of a teacher.s contract). In Snipes v. McAndrew, the South Carolina Supreme Court concluded that teachers were not entitled to an adversarial hearing to contest their reassignment:

> The Act provides for a full, adversarial hearing when a teacher is dismissed or nonrenewed. §§ 59-25-420, 59-25-430, 59-25-460 of the Code. Nowhere does it provide for a full, adversarial hearing when a teacher is merely transferred, reassigned, or demoted. We are of the opinion that policy decisions concerning where an employee will best serve the school district are better left to school officials, not the courts. Unless the legislature decides to require full, adversarial hearings for teachers upon their transfer, reassignment, or demotion to another certificated position, this Court will not require such a hearing.

Snipes, 280 S.C. at 323, 313 S.E.2d at 296.

Plaintiff has failed to show that her reassignment to the Alternative School deprived her of a protected property interest. Therefore, summary judgment is proper on her § 1983 claim for violation of her due process rights.

    **D.**    **State Law Claim**

If the Court accepts this report and recommendation, the claims over which this Court has original federal jurisdiction claim will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in

pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the Court decline to retain jurisdiction over Plaintiff's state law claim for defamation.

V.     **CONCLUSION**

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 81) be granted as to Plaintiff's Title VII claims of race discrimination and retaliation and her § 1983 claims of equal protection and due process violations, that the Court decline to exercise supplemental jurisdiction over Plaintiff's defamation claim, and that this case be dismissed in its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 25, 2011
Florence, South Carolina

**The parties are directed to the important notice on the following page.**